UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JESSICA L. HAMILTON, <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | CAUSE NO.: 3:21-CV-243-TLS-MGG |

**OPINION AND ORDER**

The Plaintiff Jessica L. Hamilton seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits. For the reasons set forth below, the Court finds that reversal and remand for further proceedings is required.

**PROCEDURAL BACKGROUND**

On December 12, 2018, the Plaintiff filed an application for disability insurance benefits, alleging disability beginning on May 14, 2018. AR 21, ECF No. 14. After the claims were denied initially and on reconsideration, the Plaintiff requested a hearing, which was held before the Administrative Law Judge (ALJ) on March 12, 2020. AR 41. On April 28, 2020, the ALJ issued a written decision, finding the Plaintiff not disabled. AR 21–32. The Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. AR 7–9. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g). On April 9, 2021, the Plaintiff filed her Complaint [ECF No. 1] in this

Court, seeking reversal of the Commissioner's final decision. This appeal is briefed and ripe for ruling. ECF Nos. 18, 21, 24.

**THE ALJ'S DECISION**

For purposes of disability insurance benefits, a claimant is "disabled" if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520.

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since May 14, 2018, the application date. AR 23.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of degenerative disc disease of the cervical spine, degenerative joint disease of the right ankle, neuropathy of the left arm, and obesity. AR 23.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R. § 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled

without considering age, education, and work experience. *Id*. § 404.1520(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing. AR 26.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently reach bilaterally; frequently handle and finger with the non-dominant left upper extremity; occasionally operate foot controls with the right foot; never climb ladders, ropes, or scaffolds and never work at unprotected heights.

AR 26.

At step four, the ALJ determines whether the claimant can do her past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). Here, the ALJ found the Plaintiff capable of doing her past relevant work as an amusement facility manager. AR 30. In the alternative, the ALJ found at step five that there are other jobs that exist in significant numbers in the national economy that the Plaintiff can perform given her age, education, work experience, and RFC. AR 31; 20 C.F.R. § 404.1520(a)(4)(v), (g). Thus, the ALJ found that the Plaintiff has not been under a disability from May 14, 2018, through the date of the decision. AR 32. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1512.

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539 (citations omitted); *see also Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758

F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

The Plaintiff argues that the ALJ made several errors in finding her not disabled. The Court finds that remand is required for the ALJ to build an accurate and logical bridge between the evidence and the RFC given the opinion of the Plaintiff's treating neurologist and the fact that the state agency opinions relied on by the ALJ were issued prior to the Plaintiff's surgery.

**A.    The Plaintiff's Relevant Medical History**

The Plaintiff has suffered from degenerative disc disease since at least 2015. AR 292–93, 339, 403. On June 4, 2018, she saw an orthopedic surgeon for left shoulder pain, which she described as a 7 on a scale of 1–10, with 10 being the most pain, and Dr. Harston found tenderness at the rotator cuff, a mildly positive impingement test, and mildly positive O'Brien test. AR 722, 725. Because the Plaintiff had no relief from conservative care, Dr. Hartson ordered an MRI. AR 726. On July 26, 2018, she reported her pain as 8 out of 10. AR 717, 733. On a referral from Dr. Hartson, the Plaintiff saw neurologist Dr. Nasar Katariwala on August 7, 2018, for evaluation of left neck and shoulder pain. AR 721, 739. She described the pain as "constant" and "sharp" and that she was "experiencing numbness and tingling at times, accompanied by occasional shooting pains from her shoulder to the left elbow." *Id*. He assessed endogenous obesity and cervicalgia (left). AR 743. An August 15, 2018 MRI of the cervical spine showed mild to moderate degenerative disc disease at C4–5, mild right neural foraminal stenosis at C3-C4, mild bilateral neural foraminal stenosis at C4–C5, and mild to moderate

5

bilateral neural foraminal stenosis at C5–C6. AR 767. Dr. Katariwala's findings from August 16, 2018 EMG/NCV testing of the Plaintiff's upper extremities showed "[m]inimal abnormal study due to left median ulnar sensory neuropathies. No evidence of active, acute or chronic left cervical radiculopathy. EMG has several significant limitations in assessing radiculopathy which can result in false negative testing. Clinical correlation is advised." AR 744.

On referral from Dr. Katariwala, the Plaintiff began seeing Dr. Syed Quadri on September 10, 2018, for pain management of the pain in her neck, left shoulder, and left arm, and she reported pain at a level of 8 out of 10. AR 543, 587. Dr. Quadri assessed cervical radiculitis/radiculopathy, cervical spondylosis, and pain of head and neck region (cervicalgia) and prescribed Lyrica, Amitriptyline, Percocet, and Diclofenac. AR 545. The Plaintiff returned on September 14, 2018, complaining of pain in her neck and left shoulder at a level of 8 out of 10. AR 538. On October 8, 2018, she reported left arm pain of 8 out of 10 and worsening pain and headaches. AR 534. On October 17, 2018, the Plaintiff underwent a cervical epidural steroid injection. AR 533. On November 6, 2018, the Plaintiff reported pain of 7 out of 10 and daily headaches. AR 529. Dr. Quadri noted, "[Patient] has been unable to maintain work hours due to [debilitating] pain . . . . I suspect if patient does not improve with subsequent CESI, [patient] will need to undergo surgical decompression." *Id.* He prescribed Amitriptyline, Norco, and Imitrex, noting that she had "failed topomax" and completed two months of physical therapy from June through July. AR 532. He also prescribed a cervical epidural steroid injection. *Id.*

On January 22, 2019, the Plaintiff met with neurosurgeon Dr. Ankit Mehta. AR 551, 607. The Plaintiff reported pain for the last two years after a motor vehicle accident with pain running into her left shoulder and down into her fingers with reduced sensation in her first two fingers on the left hand. AR 607. Dr. Mehta's plan was to "try an epidural injection to see how that

6

provided her with a benefit at C4-C5 on the left side." *Id.* On January 23, 2019, Dr. Gupta, her pain management doctor, noted on examination: "Spurling's test positive on left, limited in all directions due to pain," "tenderness noted over midline [cervical region]," decreased motor strength 4/5 for left elbow flexion and arm abduction, and motor strength of 5/5 for elbow extension and hand grips. AR 557–58. He assessed radiculopathy of the cervical region and cervical spinal stenosis. AR 558.

On February 5, 2019, the Plaintiff received a cervical transforaminal epidural steroid injection (TEESI) at left C5 by Dr. Kondamuri. AR 555. At a March 20, 2019 follow up with Dr. Gupta after a second TEESI, she reported fifty percent relief for two days before the pain returned and that her pain was at a rating of 8/10. AR 630. On May 24, 2019, the Plaintiff underwent surgery to have C4–C7 replaced. AR 786, 709. The Plaintiff did thirteen post-surgery physical therapy sessions from June through October 2019. AR 880–910. On August 8, 2019, the Plaintiff reported to Dr. Mehta that her sensation was coming back in her left arm. AR 697. However, the August 19, 2019 physical therapy note included complaints of neck pain, inability to sleep, swelling, and left arm numbness with functional limitations of lifting overhead, overhead tasks, and standing for more than thirty minutes. AR 919. She reported high levels of neck pain, left shoulder pain, shooting pain into the left arm. *Id.* At her session on September 11, 2019, she reported feeling the "same" and complained of "shooting pain in her neck" and "limited strength in her left upper extremity." AR 886. At the session on September 17, 2019, she reported feeling "the same" and complained of "clicking in her shoulder with active movements." AR 885. On September 30, 2019, she reported "feeling better" with occasional popping noise in her neck and shoulders. AR 883. On October 7, 2019, although she reported "feeling better," she also reported that "everything hurts" and she was sore. AR 882.

In October 2019, the Plaintiff fell during a migraine episode and sprained her right ankle. *See* AR 936–63, 1047. On December 4, 2019, the Plaintiff saw Dr. Michael McLeod at MPM Spine Pain and Wellness in Texas with reports of lower back pain, rating the pain as 6 out of 10. AR 997–98. She reported "bilateral SI joint injection resulted in greater than 75% reduction in her bilateral sacral pain," but she "complained of lumbar pain." AR 997. The Plaintiff agreed to proceed with "bilateral L3–S1, diagnostic facet blocks, L3–L5, diagnostic medial branch blocks." *Id*. The Plaintiff began physical therapy for lumbar spondylosis on December 19, 2019, which included eight sessions. AR 988, 991.

**B.      Residual Functional Capacity and the Medical Opinion Evidence**

The residual functional capacity ("RFC") is a measure of what an individual can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1). The "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The relevant evidence of the individual's ability to do work-related activities includes medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. The determination of a claimant's RFC is a legal decision rather than a medical one. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)).

In reviewing a disability claim, an ALJ has an obligation to evaluate every medical opinion and explain the persuasiveness of the opinion. *See* 20 C.F.R. § 404.1520c(a), (b). Medical opinions are evaluated using the following factors: (1) supportability, which means how well the objective medical evidence and supporting explanations presented by a medical source support the opinion; (2) consistency, which means how consistent the medical opinion is with the evidence from other medical sources and nonmedical sources; (3) relationship with the claimant, which considers the length of a treatment relationship, the frequency of examinations, the purpose of a treatment relationship, the extent of a treatment relationship, and whether there is an examining relationship; (4) specialization of the medical source; and (5) any other factors that tend to support or contradict the medical opinion. *Id.* § 404.1520c(c)(1)–(5). The most important factors for evaluating the persuasiveness of a medical opinion are supportability and consistency. *Id*. § 404.1520c(a), (b)(2). Therefore, the ALJ must explain how the ALJ considered those two factors in making the disability decision. *Id.* § 404.1520c(b)(2). However, the ALJ may, but is not required to, explain how the ALJ considered the remaining three factors. *Id.*

On February 6, 2020, Dr. Mehta's office filled out a Physical Assessment-Questionnaire Form, which is used to assess an individual's ability to do work-related activities and asks for the opinion, based on medical findings, of what the Plaintiff can still do despite her impairments. AR 1039–40. The form represents that Dr. Mehta had been treating the Plaintiff since January 2019. AR 1039. Dr. Mehta opined that he expected the Plaintiff's impairment to last 1 year or more. *Id.* Dr. Mehta opined that the impairment prevents the Plaintiff from standing 6–8 hours and she can only stand 1–2 hours at one time and 1/2 hour total in a workday;[1] the impairment prevents the Plaintiff from sitting upright for 6–8 hours and she can only sit 1/2 hour at one time and 1 hour

---

[1] These findings are inconsistent; however, when the form is viewed as a whole, it is possible that the answers to these two questions may have been reversed.

9

total in a workday. AR 1039. The reason given for the standing and sitting limitations was "neck pain that radiates into arms." *Id.* Dr. Mehta opined that the Plaintiff would need to lie down during flare ups, has difficulty with ambulation, and has weight-bearing restrictions. *Id.* Dr. Mehta opined that the Plaintiff can only "occasionally" reach above shoulders, reach down to waist level, reach down towards floor, and handle objects with hands/fingers. *Id*. The report provides that the Plaintiff can safely lift and carry 5–10 pounds in an 8-hour period. AR 1040. Also, the Plaintiff's impairments prevent her from performing certain motions, such as lifting, pulling, and holding objects with further difficulty bending, squatting, kneeling, and turning her body. *Id*. The report finds that the Plaintiff suffers from chronic pain following ACDF surgery and indicates that the Plaintiff is not capable of sustaining work on a continuing basis due to chronic neck and arm pain. *Id.*

      This opinion is consistent with the Plaintiff's report at the first visit with Dr. Mehta on January 22, 2019, at which Dr. Mehta noted that the Plaintiff "had reduced sensation in her first two fingers on the left compared to the right." AR 553. It is also consistent with the Plaintiff's reports of pain and numbness during physical therapy from June through October 2016 and with her hearing testimony in March 2020 that she has no feeling in her left arm and experiences pain that radiates from her neck to her back, primarily on the left. AR 27. She testified that she has "no feeling in her fingers, fingertips, nothing," and that she cannot hold a cup of coffee with her left arm and cannot button or use a zipper. AR 54. In her adult function reports, she indicated that, in the morning, after watching TV while eating and then taking the dogs out, she lies down because her neck and shoulder bother her from sitting up so long. AR 198. She reported that she has trouble dressing and buttoning shirts and that her inability to do house and yard work is because she cannot use her left arm without shoulder and neck pain. AR 199, 201–05, 220–27.

She testified that standing for too long or sitting for too long puts a lot of pressure on her back and exacerbates the pain. AR 53. She also testified that she cannot sit in a chair longer than "20 to 30 minutes maybe" and cannot stand longer than "30 minutes." AR 53.

Despite the Plaintiff's statements regarding her pain and limitations, which appear consistent with her significant treatment history that included surgery and the limitations opined by Dr. Mehta, the ALJ formulated an RFC that allows for frequent reaching bilaterally and frequent handling and fingering with the non-dominant upper left extremity. AR 26. However, it appears that this limitation is based on the opinions of the state agency reviewing doctors at the initial and reconsideration levels on March 14, 2019, and June 10, 2019, respectively, who rated the Plaintiff's manipulative limitations as unlimited in reaching in any direction and "limited" on the left for handling and fingering with a "frequent handing and fine motor" on the left. AR 79–80, 93. Yet, the most recent records considered by Dr. Corcoran on reconsideration were dated May 9, 2019, which were for an unrelated bariatric surgery consultation. AR 94. Before that, the most recent record considered was Dr. Gupta's March 20, 2019 follow up examination. *Id.* The Plaintiff underwent the ACDF surgery on May 24, 2019, AR 786, which was after both opinions, and there is no indication in Dr. Corcoran's record that he was aware of the surgery, *see* AR 92–94. The Plaintiff began her post-surgery physical therapy on June 27, 2019. AR 908.

Thus, the state agency doctors did not review any of the updated records from the May 24, 2019 surgery or the Plaintiff's physical therapy sessions. Many of those records suggest that the Plaintiff did not receive significant improvement from the surgery. AR 880–910. In other words, the ALJ relied on opinion evidence that predates the more recent and relevant treatment records in assessing her RFC. Although the state agency opinions are not "old" in the sense they are dated less than a year before the ALJ's decision, they are nevertheless "outdated" for

11

purposes of the RFC analysis because they predate the Plaintiff's neck surgery and physical therapy. It is possible that the state agency doctors may have changed their opinions in light of this significant medical procedure. *See Pavlicek v. Saul*, 994 F.3d 777, 783–84 (7th Cir. 2021) ("An ALJ must not rely on a physician's assessment 'if later evidence containing new, significant medical diagnoses reasonably could have changed' the physician's views." (quoting *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018))); *Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010) (finding that the ALJ erred by not adequately explaining why the opinions of a state agency psychiatrist and psychologist were entitled to greater weight when they did not have access to subsequently created medical records from a treating psychiatrist).

The Court recognizes that the ALJ found Dr. Mehta's opinion not persuasive for three listed reasons. AR 30. The ALJ believed that Dr. Mehta suggested that the Plaintiff "would need to be bedridden over 18 hours a day" because of his opinion that the Plaintiff "could sit/stand for a total of less than two hours out of every eight hours." AR 30; *see id.* 1039. However, Dr. Mehta did not opine that the Plaintiff was bedridden. Dr. Mehta opined that she was unable to perform the requisite continuous hours of work in an 8-hour workday. This opinion is consistent with her testimony regarding her need to lie down throughout the day. This reason for discounting Dr. Mehta's opinion is not persuasive. The vocational expert testified that a need to alternate standing and sitting every 30 minutes would eliminate all light work and that there would be no employment for an individual who was "limited to standing two hours in a workday and sitting one hour in a workday." AR 68–69.

The ALJ also found Dr. Mehta's opinion to be internally inconsistent because, under the question "Does the impairment/disability prevent the patient from standing for 6–8 hours?"—to which Dr. Mehta answered "yes," Dr. Mehta wrote in "1–2 hrs" for "How long can they stand *at*

*one time*" but only "1/2 hr" for "How long can they stand *total* in a workday." AR 1039. Although those answers are inconsistent on their face, when the opinion is considered as a whole, the more plausible explanation is that the answers were reversed. Regardless, the answers show that Dr. Mehta believed the Plaintiff was significantly limited in her ability to stand during the workday.

Finally, the ALJ discounted Dr. Mehta's opinion when he noted that she was able to travel to Texas to be with family and to Virginia for a funeral. AR 30. However, the record shows that the Plaintiff traveled to Texas because her father had a heart attack. AR 1050. The ALJ does not explain how these two instances of travel—necessitated by illness or death—demonstrate that the Plaintiff was not in disabling pain during the travel or that she was not otherwise able to alleviate her pain by shifting her position accordingly. Again, this reason for discounting Dr. Mehta's opinion, without more, is not persuasive.

The Court recognizes that, earlier in the opinion, the ALJ considered diagnostic testing of her ankle as well as the cervical spine from October 2019 that showed no hardware failure from the surgery. AR 29, 826–27, 858, 861, 863–64. However, that is new medical evidence that was not reviewed by the state agency physicians, and the ALJ is not qualified to interpret the results to suggest that the Plaintiff was not still in disabling pain following surgery. *See, e.g.*, *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) ("But no medical source opined that the imaging results were inconsistent with Lambert's complaints of disabling pain."); *Akin v. Berryhill*, 887 F.3d 314, 317–18 (7th Cir. 2018) (finding that, without an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were "consistent" with his RFC assessment (citing *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014); *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014))).

The Court finds that the ALJ has not created a logical bridge between the evidence of physical limitations caused by the Plaintiff's severe impairments of degenerative disc disease of the cervical spine and neuropathy of the left arm and the fingering and reaching limitations in the RFC. Remand is required for proper consideration of the opinion evidence as well as the Plaintiff's subjective symptoms in formulating the RFC.

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in the Plaintiff's Brief [ECF No. 18] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion.

SO ORDERED on September 30, 2022.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT